UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR BURTON,

    Plaintiff,

v.

Case No. 20-cv-12501
Hon. Matthew F. Leitman

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

    Defendants.

_____/

## **ORDER OF PARTIAL SUMMARY DISMISSAL**

Plaintiff Lamar Burton is a state inmate currently incarcerated at the Ionia Maximum Correctional Facility. On September 1, 2020, Burton filed this *pro se* prisoner civil rights action under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) This action stems from a February 10, 2019, fight in the day room at the Macomb Correctional Facility, where Burton was previously incarcerated. Burton asserts that after the fight he was written false misconduct tickets and thrown to the floor head-first by corrections officers who were transferring him to segregation. He insists that this treatment aggravated a preexisting arm condition and injured his neck. Burton filed grievances related to this alleged use of force, and he asserts that in retaliation for doing so he received deliberately indifferent medical care for his injuries.

1

Burton has named twenty-three Defendants in the Complaint. As detailed below, the Court will summarily dismiss the claims brought against most of the named of the Defendants because those claims fail to state a claim on which relief can be granted. However, the Court will permit this action to proceed against Defendants CO Stemen, CO Freiburger, CO Peterson, PA K. Farris, RN L. Rivard, NP J. Martino, and RN Duncan.

I

The Court has previously granted Burton leave to proceed without prepayment of the filing fee for this action due to his indigence. (*See* Order, ECF No. 3.) Under the Prison Litigation Reform Act of 1996, the Court is required to *sua sponte* dismiss an *in forma pauperis* complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court is likewise required to dismiss a complaint seeking redress against government entities, officers, and employees that it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). A complaint is frivolous if it lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A *pro se* civil rights complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, Federal Rule of Civil Procedure 8(a) still requires that all complaints, including those filed by *pro se* litigants, set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While this pleading standard does not require "detailed" factual allegations, *id.*, it does require more than the bare assertion of legal conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*.

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). Additionally, a plaintiff must allege that the deprivation of rights was intentional,

not merely negligent. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986).

## II

Burton's Complaint names twenty-three Defendants: (1) the Michigan Department of Corrections, (2) Corizon Medical Inc., (3) CO Stemen, (4) CO Freiburger, (5) CO Peterson, (6) Warden Warren, (7) E. Taylor, (8) R. Russell, (9) H.I. Bridges, (10) RN L. Adray, (11), PA K. Farris, (12) HUM H. Cooper, (13) RN T. Johnson, (14) RN L. Rivard, (15) NP J. Martino, (16) Dr. P. Schmidt, (17) RN A. Wolf, (18) RN Duncan, (19) P. Lamb, (20) RN McCoy, (21) RN S. Smoyer, (22) RN Cope, and (23) RN Jane Doe. (*See* Compl., ECF No. 1.) His factual allegations are as follows.

Burton asserts that while he was a prisoner at the Macomb Correctional Facility, on February 10, 2019, a fight broke out among three other prisoners in the day room. Burton and the other prisoners present were ordered to lock down in their cells. Burton asked if he could take his food tray with him. A corrections officer again ordered Burton to go to his cell without his food. When Burton tried to take his tray with him, he asserts that Defendant CO Stemen pushed against him while trying to reach for the tray. Burton says that as a result of this incident, Stemen falsely wrote him (Burton) a misconduct ticket and directed two other officers to take Burton to segregation.

Burton alleges that he was ten escorted to the segregation unit by Defendants CO Freiburger and CO Perterson. He asserts that due to his mental illnesses and out of a fear of segregation, his legs involuntarily buckled, causing him to pull down on the arms of the officers. Burton claims that when his legs buckled, the officers slammed him to the ground face-first which injured his arm and neck. Burton further claims that he had a previous medical condition requiring him to wear an arm brace and for which surgery had been recommended. This incident resulted in Burton receiving a second misconduct ticket.

Before being taken to segregation, Burton asked to be seen at the health care unit. Freiburger and Peterson took him there, and Defendant nurses Adray and McCoy gave Burton a bag of ice for his head.

Burton later filed grievances arising out of the February 10 incident. Then, on February 27, 2019, he elected to have the previously recommended arm surgery. On April 22, 2019, the health care unit granted his request for that surgery. Burton claims that the two-month delay in approving the surgery was an act of retaliation for grievances he had filed related to the February 10 incident.

On July 2, 2019, Burton had surgery on his arm at Henry Ford Hospital. On July 6, 2019, RN Wolf cleaned and dressed his wound. Burton insists that upon his return to prison, Defendants PA Farris and NP Martino discontinued his pain medications out of retaliation for his previously filed grievances. Burton says that

he then started to experience severe pain in his arm. On July 9, 2019, he was taken to health care, but Defendant RN Rivard refused to see him.

The next day Burton was seen at health care by Defendant PA Farris, who saw that the surgery site had become badly infected. Farris immediately sent Burton to the emergency room. On July 13, 2019, Defendant RN Cope cleaned and dressed Burton's wound. Burton insists that the health care unit had failed to properly provide post-operative care in order to retaliate against him for the grievances he had filed.

Burton claims that in addition to his arm injury, Defendants also inadequately addressed his neck injury. He asserts that he requested treatment for his neck from health care on February 15, 2019, and though an x-ray was negative, his neck continued to hurt him. He wrote a letter to Defendant Warden Warren on March 10, 2019, but Warren took no action. Burton says that he was seen by medical services for neck pain on May 3, 2019, May, 12, 2019, and June 24, 2019. During the last appointment, it was recommended to Burton that he wear a neck brace. Burton claims, however, that Defendants Farris and Martino refused to provide him a neck brace under the pretense that further testing was required.

On July 2, 2019, when Burton was seen at Henry Ford for post-operative care, it was again recommended that he wear a neck brace. Burton was then provided a neck collar. But Burton insists that Defendant RN Duncan took away his neck collar

and instructed corrections officers not to allow him to use a towel as a make-shift support device for his neck.

Burton attaches numerous records to his complaint. Among them, it appears that Burton filed at least twenty grievances between February 26, 2019, and August 27, 2019. The partial records indicate that Burton complained about the incident on February 10, 2019, where he was injured, the acts of alleged retaliation that followed from that incident, and the failure of the prison health care unit to address his medical issues.

### III

In Burton's Complaint, he does not explicitly state legal theories in support of his claims.  But the facts that Burton alleges suggest claims that (1) his Eighth Amendment rights were violated by the use of excessive force on February 10, 2019, (2) his First Amendment rights were violated by acts of retaliation against him for filing grievances, and (3) his Eighth Amendment rights were violated due to a deliberate indifference to his serious medical needs.  The Court will examine each of these claims in turn.

### A

The Court first turns to Burton's claim that Defendants CO Stemen, CO Freiburger and CO Peterson subjected him to excessive force and injured his arm and neck.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," courts should apply the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986) to claims of excessive force. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, courts should evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id*. (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is

8

"not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 37 (quoting *Hudson*, 503 U.S. at 7). The court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id*. at 38 (quoting *Hudson*, 503 U.S. at 9).

Liberally construed, Burton's Complaint alleges that Defendants Freiburger and Peterson unnecessarily used excessive force when they brought Burton to the ground after he claims that his legs buckled. Burton says that without warning, the two officers "lift[ed] him off his feet by his arms and slammed him into the floor head/face first. He was slammed with a force so strong that his glasses broke off his face upon impact. Never did Plaintiff resist these two officers to be handled such." (Compl., ECF No. 1, PageID.4.) And according to Burton, the use of this force caused him significant injury that caused him extreme pain in his arm and neck that persisted for a period of months. In addition, Burton alleges that CO Stemen pushed him (Burton) against a wall. For purpose of screening the complaint, Burton's excessive force claim against Defendants Stemen, Freiburger and Peterson is not subject to summary dismissal.

9

**B**

Burton next asserts that Defendants violated his First Amendment rights when they retaliated against him for his filing of prison grievances.

The requirements for a valid First Amendment retaliation claim are well established. In order to state a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must plead and be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Of the twenty-two named Defendants, the Court can discern only a few allegations of adverse actions that are attributed to particular Defendants. For example, Burton asserts that Defendants Farris and Martino wrongfully discontinued his pain medications after his surgery in retaliation for the grievances, and that they later refused to provide him with a neck collar for the same reason. He also claims that Defendant Rivard refused to see or treat him when his surgical wound became

infected as a result of his prior grievances. And he alleges that Defendant Duncan, in retaliation for the grievances, told corrections officers not to allow Burton to use a towel for his neck despite Burton's neck injury. To the extent that Burton brings a First Amendment claim against these Defendants, they are not subject to summary dismissal.

To the extent that Burton brings a First Amendment claim against any of the other Defendants, those claims will be summarily dismissed. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See id*. Burton does not allege facts with respect to any of the other named Defendants indicating that they took any adverse actions, or that they did so as a result of his protected conduct. The Court will therefore summarily dismiss Burton's First Amendment claims against all Defendants except for Defendants Farris, Martino, Rivard, and Duncan.

## C

Finally, Burton asserts that Defendants Farris, Martino, Rivard, and Duncan were deliberately indifferent to his arm and neck injuries and with respect to the post-operative care of his arm surgery. As described above, the Eighth Amendment bans, as cruel and unusual, any punishment that involves the unnecessary and wanton infliction of pain. *See Hudson*, 503 U.S. at 5. And it is well established that deliberate indifference to serious medical needs constitutes the unnecessary and wanton infliction of pain. *See Estelle*, 429 U.S. at 104-105. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, a prison official acts with deliberate indifference when he or she acts with criminal recklessness, *i.e.*, when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-840); *see also Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) ("a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment" so that "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the

prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.").

Burton's deliberate indifference claim against Defendants Farris, Martino, Rivard, and Duncan are not subject to summary dismissal.  He asserts that Defendants Farris and Martino discontinued his pain medications after his surgery with deliberate indifference to his post-surgical pain. He asserts that Defendant Rivard refused to see or treat him when his surgical wound became infected with deliberate indifference to his serious medical need for treatment. And he asserts that Defendant Duncan told corrections officers not to allow Burton to use a towel for his neck despite what he alleges was a serious neck injury.

Burton does not allege specific facts showing that any of the other named Defendants took actions against him with deliberate indifference to a serious medical need.  Thus, to the extent that Burton seeks to bring a deliberate indifference claim against any of the other Defendants, those claims are subject to summary dismissal.

## IV

The Court next turns to Burton's implied claims against the Michigan Department of Corrections (the "MDOC").  Burton does not appear to bring any specific claim against the MDOC.  In any event, it is well established that the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of*

*Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984)).  As a state agency, the MDOC is entitled to immunity from civil rights suits in federal court. *See Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 215 (6th Cir. 2001); *Adams v. Calhoun Cty.*, 2019 WL 3501815, at \*2 (6th Cir. Apr. 24, 2019).  The Court will therefore summarily dismiss Burton's claims against the MDOC on the basis of immunity.

V

Finally, Burton has named Corizon Medical Inc. as a Defendant. It is well-settled, however, that a corporation like Corizon cannot be held liable in a Section 1983 suit under the theory of vicarious liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996) (*Monell's* bar to respondeat superior liability applies to private corporations such as Corizon that are performing services as an agent of the State and are therefore deemed to be state actors for purposes of Section 1983). Rather, to state a claim of deliberate indifference against Corizon, Burton must plead a claim arising out of a specific policy, practice, or custom of that "directly caused [him to suffer] a deprivation of federal rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997)). Burton has made no such allegations against Corizon.  The Court will therefore summarily dismiss his claims against Corizon.

## VI

For all of the reasons state above, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court **SUMMARILY DISMISSES** the claims brought against Defendants (1) the Michigan Department of Corrections, (2) Corizon Medical Inc., (6) Warden Warren, (7) E. Taylor, (8) R. Russell, (9) H.I. Bridges, (10) RN L. Adray, (12) HUM H. Cooper, (13) RN T. Johnson, (16) Dr. P. Schmidt, (17) RN A. Wolf, (19) P. Lamb, (20) RN McCoy, (21) RN S. Smoyer, (22) RN Cope, and (23) RN Jane Doe.

The case may proceed with respect to Defendants (3) CO Stemen, (4) CO Freiburger, and (5) CO Peterson on Burton's excessive-force claim, and against Defendants (11) PA K. Farris, (14) RN L. Rivard, (15) NP J. Martino, and (18) RN Duncan on Burton's retaliation and deliberate-indifference claims.

**IT IS SO ORDERED.**

Dated: October 29, 2020

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 29, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda  
Case Manager  
(810) 341-9764